|  |  |
|---|---|
| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| | |  |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO.  4:14-CR-180(3) |
| | § | |
| DEREK DIONE COFER | § | |

## MEMORANDUM AND ORDER

Pending before the court are Defendant Derek Dione Cofer's ("Cofer") *pro se* Motion for Compassionate Release (#366) and *pro se* Motion for Appointment of Counsel (#367), wherein he requests that the court reduce his sentence of imprisonment and place him on probation or home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the threat of Coronavirus Disease 2019 ("COVID-19") and to appoint counsel to assist him in seeking compassionate release. The Government opposes the compassionate release motion (#369). After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motions, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.  Background

On August 25, 2015, Cofer pleaded guilty pursuant to a non-binding plea agreement to Count One of the Indictment charging him with Conspiracy to Possess with Intent to Distribute 500 Grams or More a Mixture or Substance Containing a Detectable Amount of Methamphetamine of 50 Grams or More of Methamphetamine (actual), in violation of 21 U.S.C. § 846. On March 14, 2016, the court sentenced Cofer to 135 months' imprisonment followed by a five-year term of supervised release. Cofer is currently housed at the Federal Correctional Institution Seagoville, located in Seagoville, Texas ("FCI Seagoville"). His projected release date is August 14, 2024.

II. <u>Appointment of Counsel</u>

Cofer requests the appointment of counsel to assist him in filing a motion for compassionate release under 18 U.S.C. § 3582(c). There is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, ___ U.S. ___, 139 S. Ct. 738, 749 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018); *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir.), *cert. denied*, 571 U.S. 952 (2013). Specifically, the Supreme Court of the United States has stated:

> Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals. We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori*, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process.

*Finley*, 481 U.S. at 555 (internal citations omitted).

The court may, however, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with factually and/or legally complex issues. *See United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court.").

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Cofer is not entitled to the appointment of counsel to assist him with seeking compassionate release under 18 U.S.C. § 3582. *See Finley*, 481 U.S. at 555; *Whitebird*, 55 F.3d at 1010-11 (declining to recognize constitutional or statutory right to assistance of counsel in bringing § 3582(c)(2) motion for sentence reduction); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings."). Moreover, Cofer provides no basis for the court to conclude that the appointment of counsel would help him obtain relief. A motion "for compassionate release is not particularly complex factually or legally." *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020). In any event, Cofer has failed to raise any potentially viable claims or any factually or legally complex issues that could arguably justify the appointment of post-conviction counsel. Cofer is 38 years old, and there is no indication that he is terminally ill, disabled, or otherwise a candidate for compassionate release.

Thus, the court finds that the discretionary appointment of counsel is not warranted. *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require"). Accordingly, Cofer's motion for appointment of counsel is denied.

III. <u>Compassionate Release</u>

On December 21, 2018, President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb.

27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court. Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative

remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

In this situation, it appears that Cofer has exhausted his administrative remedies. Attached to Cofer's motion is the response of Warden K. Zook of FCI Seagoville, dated July 14, 2020, denying Cofer's request for compassionate release. Although the court finds that Cofer complied with the exhaustion requirement before filing the current motion, nothing in his motion indicates that extraordinary and compelling reasons exist to reduce his sentence and release him from confinement.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an

extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C. § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

As grounds for relief set forth in his motion, Cofer asserts that he is eligible for compassionate release because his medical conditions, hypertension and cardiac arrythmia, make him vulnerable to COVID-19. Cofer provides his BOP medical records to support his contention. The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

Here, according to Cofer's Presentence Report ("PSR"), prepared in 2015, he reported to Probation that he had no health concerns and was not prescribed any medication. Probation's investigation confirmed that Cofer has hypertension but notes that it is controlled by medication (hydrochlorothiazide). Cofer's medical records reveal that he had an elevated blood pressure reading of 132/86 in June 2020, but in March 2020, his blood pressure reading was normal at 116/78. Although Cofer previously experienced cardiac arrythmia, the condition resulted from his prior hypertension medication (amlodipine), which brought on palpitations; however, he has not been prescribed that medication since 2019 and no longer has this affliction. BOP records disclose that Cofer is classified as a Medical Care Level 2 inmate (stable, chronic care). BOP's Clinical Practice Guidance explains: Care Level 2 inmates "are stable outpatients who require clinical evaluations monthly to every 6 months; their medical and mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring; and enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time." Hence, Cofer's health concerns appear to be well-controlled by monitoring, testing, and medication. Additionally, according to the documentation submitted by Cofer, he has no medical restrictions and is cleared for food service.

This medical summary does not meet the criteria listed above. None of these medical conditions is terminal or substantially diminishes his ability to provide self-care. Cofer has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce his sentence. "[C]ompassionate release is discretionary, not mandatory, and may be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). Where, as here, a prisoner has

engaged in "severe" criminal conduct, the district court has discretion to deny compassionate release after weighing the evidence. *Id.* at 693-94.

Cofer's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Cofer for any "other" reason. It is well settled that "compassionate release is discretionary, not mandatory." *Chambliss*, 948 F.3d at 693. Furthermore, in view of Cofer's offense of conviction and related

criminal activities, the court cannot conclude that he would not pose a danger to the safety of any other person or to the community, if released.

Cofer maintains that if he contracts COVID-19 it will be fatal for him due to prison overcrowding and there being no way to distance himself from other inmates. Cofer expresses concern regarding the spread of COVID-19 among the prison population. Nevertheless, as of November 7, 2020, the figures available at www.bop.gov list 12 inmates (out of a total inmate population of 1,640) and 1 staff member at FCI Seagoville as having confirmed positive cases of COVID-19, 1,283 inmates and 30 staff members who have recovered, and 4 inmates who have succumbed to the disease. Indeed, according to Cofer's medical records, he tested positive for COVID-19 on July 1, 2020, was placed in isolation, was monitored, was treated with acetaminophen, and has now recovered from the virus. A BOP medical record dated July 29, 2020, includes an entry by a certified nurse practitioner stating, "the patient is not severely immunocompromised and did not have a severe illness requiring hospitalization." Thus, it appears that the facility where Cofer is housed is handling the outbreak appropriately and providing adequate medical care.

Although Cofer expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage an outbreak within his correctional facility or that the facility is specifically unable to treat Cofer, if he were to contract the virus once again and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No.

CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Courts have repeatedly denied COVID-19-based motions for compassionate release filed by inmates who have already contracted and recovered from the virus. *See*, *e.g.*, *United States v. Stockman*, No. H-17-116-2, 2020 WL 5269756, at *3 (S.D. Tex. Aug. 26, 2020) (noting that when an inmate is infected and recovers from COVID-19, the courts have found the risks of infection or severe symptoms or effects because of underlying conditions change and diminish); *United States v. Baker*, No. CR 16-179, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus."); *United States v. Neal*, No. CR 11-28, 2020 WL 4334792,

at *1 (E.D. La. July 28, 2020) ("Courts have repeatedly found that defendants who contract COVID-19 and recover are not among those who fall within the guidelines or demonstrate 'extraordinary and compelling reasons,' meriting a reduction in their sentence."); *United States v. Gallegos*, No. 4:17-CR-568, 2020 WL 3403032, at *3 (S.D. Tex. June 19, 2020) ("Having already contracted and fully recovered from COVID-19, the Court cannot say that Defendant's asthma 'substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility.'" (quoting U.S.S.G. § 1B1.13)). Hence, Cofer has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Chambliss*, 948 F.3d at 693-94. The nature and circumstances of Cofer's offense of conviction entail his participation in a drug trafficking conspiracy involving the distribution of 277.2 grams methamphetamine (actual). Cofer supplied coconspirators with gram quantities of methamphetamine from various sources for distribution to others in the Eastern and Northern Districts of Texas. He sold approximately 75 grams of methamphetamine in controlled buys to task force officers. During a search of his residence, officers recovered more than 202 grams of methamphetamine, some of which were found in the toilet, $505.00 in United States currency, and a digital scale. Cofer also has a history of poly-substance abuse starting at age 9. Most significantly, Probation notes that Cofer presents a risk of violence, if released. As set forth in the PSR, on February 19, 2014, Cofer attempted to collect a drug debt and got into a verbal argument with the victim at a gas station.

Subsequently, Cofer waited in his car until the victim exited the gas station. Upon the victim's exit, Cofer began chasing him on foot and shot the victim multiple times, resulting in serious bodily injuries. Cofer was charged by Texas state authorities with aggravated assault with a deadly weapon, to which he pleaded guilty and subsequently served a two-year sentence. Under the circumstances, the court cannot conclude that Cofer would not pose a danger to the safety of any other person or to the community, if released from confinement.

Furthermore, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See Collins*, 2020 WL 1929844, at *3. The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. Since March 26, 2020, the BOP has placed 16,777 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *Ambriz v. United States*, ___ F. Supp. 3d ___, No. 4:20-CV-568-P, 2020 WL 3066861, at *2 (N.D. Tex. June 5, 2020); *United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020)

13

("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, there is no reason to believe that Cofer would not revert to his criminal activities if released from prison at this juncture.

In short, Cofer has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the

rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

IV. Conclusion

Consistent with the foregoing analysis, Cofer's Motion for Compassionate Release (#366) and Motion for Appointment of Counsel (#367) are DENIED.

SIGNED at Beaumont, Texas, this 9th day of November, 2020.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE